IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ROGER ECHOLS**, on behalf of himself and all similarly situated individuals,    ) ) ) | Civil Action No. |
| Plaintiff,    ) | |
| v.    ) ) | |
|     ) | JURY TRIAL DEMANDED |
| **METRO BROKERS, INC.**,    ) ) | |
|     ) | COLLECTIVE CERTIFICATION SOUGHT |
| Defendant.    ) ) | |
| _____    ) | |

## COMPLAINT FOR DAMAGES

Plaintiff, Roger Echols ("Plaintiff" or "Echols"), by and through his undersigned attorneys, for his Complaint against Defendant, Metro Brokers, Inc. ("Defendant"), states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, Roger Echols, individually and on behalf of all similarly situated persons employed by Defendant, Metro Brokers, Inc., arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. According to its website, Better Homes and Gardens Real Estate Metro Brokers, Atlanta, GA is a licensed real estate broker in Georgia, North

Carolina, South Carolina, Tennessee, and Alabama.[1] See, http://www.metrobrokers.com/about (last accessed January 19, 2015).

3. Defendant's website provides the following description of the company:

> Metro Brokers has more than 1,800 metro Atlanta and north Georgia real estate agents who are experts in all areas of real estate. Our agents know metro Atlanta and north Georgia neighborhoods like it's their own backyard, and will help you in your home search to find a home in the metro Atlanta area that's perfect for you. Whether you are buying or selling a home in the Georgia real estate market, Better Homes and Gardens Real Estate Metro Brokers will be there for you every step of the way.

See, http://www.metrobrokers.com/about (last accessed January 19, 2015).

4. Defendant employs customer care representatives – such as Plaintiff – who work in a call center and whose job duties include answering incoming calls, routing calls to the appropriate real estate agents or staff, and marketing administration tasks such as filling envelops in between calls. These customer care representatives are hourly, non-exempt employees.

5. Defendant also employs Assistant Managers for the call center—such as Plaintiff – whose job duties include supervising 2-4 other call center employees,

---

[1] Upon information and belief, Metro Brokers, Inc. is the correct party Defendant because Metro Brokers, Inc. is registered with the Georgia Secretary of State (Entity ID #667113) and Metro Brokers, Inc. is the business entity that issued Plaintiff's paychecks. However, Metro Brokers, Inc. is sometimes known as "Better Homes and Gardens Real Estate Metro Brokers."

entering data about new agents and staff into the company's database, changing backup tapes, sending birthday notifications to staff and agents, answering calls, updating agent's voicemail, and monitoring the customer care representative's calls to verify that they are handled correctly. These assistant managers are hourly, non-exempt employees.

6. Defendant also employs people who work in its supply store—such as Plaintiff—whose job duties include answering incoming calls, filling real estate agent's orders, performing inventory and stocking, shipping orders via FedEx, and ensuring that the mail gets stamped and ready for the courier at 5:30 p.m. These supply store employees are hourly, non-exempt employees.

7. Defendant failed to compute Plaintiff's overtime pay properly. For example, Defendant paid Plaintiff only $10.56 for each hour worked over forty (40) in a workweek when Plaintiff's base rate of pay was between $11.00-$13.00 per hour throughout his employment. Instead, Defendant should have paid Plaintiff one and one-half (1.5) times this regular hourly rate each hour worked over forty (40) in a workweek. *See, e.g.,* Plaintiff's Pay Stubs attached as Exhibit A.

8. For instance, for the two-week pay period ending on March 31, 2014, with a check date of April 1, 2014 (check #547562, attached as Exhibit A),

Plaintiff worked 88.00 hours at $13.00/hr.  Assuming Plaintiff worked forty-four (44) hours each week this pay period, Defendant should have paid Plaintiff eighty (80) hours at his base rate of pay of $13.00 per hour and four (4) hours at Plaintiff's overtime rate of $19.50 hour for each week in this pay period.

9. By way of another example, for the two week pay period ending on December 15, 2013, with a check date of December 16, 2013 (check #541343, attached as Exhibit A), Plaintiff worked eighty (80) hours at his regular rate of $13.00 per hour and an additional seventeen (17) hours at the rate of $10.56 per hour.  Plaintiff avers that the seventeen (17) hours at $10.56 per hour are overtime hours that should have been paid at $19.50 per hour instead of $13.00 per hour.

10. Defendant's pay records for Plaintiff contain many more instances of overtime computation violations.

11. Defendant does not compensate the customer care representatives and the Assistant Mangers for the call center for all work performed.  Plaintiff was required to log into the computer system approximately five (5) to ten (10) minutes before their designated start time but Defendant did not pay customer service representatives for this "off-the-clock" boot-up time.  Moreover, if a customer care representative logged in late, Defendant would improperly dock the employee a percentage based on fifteen (15) minute increments.

12. This policy results in customer care representatives and Assistant Managers for the call center not being paid for all time worked and for all of their overtime in violation of the FLSA.

13. Defendant's call center customer care representatives and Assistant Managers use multiple computer programs and servers in the course of performing their responsibilities. These programs, servers and applications are an integral and indispensable part of their work because they cannot perform their job without them.

14. Defendant's call center customer care representatives perform the same basic job duties and are required to use the same computer programs, software programs, servers, and applications.

15. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's customer service representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which have occurred in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." DOL Fact Sheet #64, at 2 (attached hereto as Exhibit B).

16. Plaintiff was employed by Defendant as an office-based call center customer care representative and Assistant Manager for the call center, among other positions. In order to perform these jobs, Plaintiff was required to start-up and log-in to three different sites before he was clocked-in, i.e., the phone system, the company's website, and a real estate website (MLS). The start-up and log-in process took substantial time on a daily basis with said time ranging from five (5) to ten (10) minutes per day.

17. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." DOL Fact Sheet, at 2. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

18. Defendant knew or could have easily determined how long it takes for its customer service representatives to complete the preliminary start-up and log-in process and Defendant could have properly compensated Plaintiff and the Class for the preliminary start-up and log-in work they performed, but did not. On behalf of

himself and other similarly situated customer care representatives, Plaintiff seeks to recover the full measure of back-pay and damages.

19. The named Plaintiff is a former employee who worked as a customer care representative and Assistant Manager for the call center who worked for Defendant on an hourly basis at its office in Atlanta, Georgia.

20. Plaintiff brings this action on behalf of himself and all other similarly situated hourly office-based call center employees of Defendant—including customer care representatives and Assistant Managers of the call center—to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

22. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

23. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's customer care representatives engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

24. This court has personal jurisdiction over Defendant because it transacts business within the state of Georgia and is registered with the Georgia Secretary of State.

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant operates its business and employs customer care representatives in this district and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

26. Plaintiff, Roger Echols, is a resident of Sandy Springs, Georgia, who was employed by Defendant from October 2011 through June 20, 2014. Plaintiff worked as a customer care representative from October 2011 through August 2012, earning $11.00 per hour. From April 1, 2013, until June 20, 2014, Plaintiff worked as an Assistant Manager of the Call Center, earning $13.00 per hour.

27. Additionally, Plaintiff worked in the company's supply store from August 1, 2012, until June 20, 2014, for a half-day, from Monday through Friday.

Defendant increased Plaintiff's base pay $1.00 per hour while he worked in the supply store and simultaneously as the Assistant Manager for the call center. He would work from 11:00 a.m. until 2:30 p.m. in the call center, take a lunch break, work in the supply store until 5:30 p.m., after which he returned to work in the call center until 8:00 p.m. Plaintiff would also work two weekends per month, for a total of approximately fifty (50) hours per week.

28. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as Exhibit C.

29. Defendant Metro Brokers, Inc. is a Georgia corporation with its address of record and principal place of business located at 5775-D Glenridge Dr., NE, Suite #200, Atlanta, Georgia, 30328-5380. Defendant's registered agent is Kevin R. Levent, listed at the same address.

30. Upon information and belief, Defendant employs approximately 200 employees at its Atlanta office.

## GENERAL ALLEGATIONS

31. Plaintiff worked in the call center from August 2011 through June 2014 either as a customer care representative or as Assistant Manager for the call center. During his first year, Plaintiff's shift lasted from 9:00 a.m. until 5:30 p.m. After his first year, Plaintiff worked from 11:00 a.m. until 8:00 p.m.

32. Throughout his employment with Defendant, Plaintiff regularly worked off-the-clock while working in the call center as a customer care representative and/or as the Assistant Manager of the call center.

33. Additionally, throughout his employment, Defendant would fail to correctly calculate Plaintiff's overtime pay and Defendant would fail to pay Defendant all of the overtime pay that he was owed.

34. In order to perform his jobs, Plaintiff was required to start-up and log-in to several secure websites and servers. The start-up and log-in process took substantial time on a daily basis, with said time ranging from five (5) to ten (10) minutes per day.

35. Plaintiff was not actually "clocked in" for his shift until *after* the computer start-up and log-in process was complete and he had logged into the applicable programs, software, server, and applications; meaning that Plaintiff and all other Class members worked at least 5-10 minutes each per shift they were never compensated for. This off-the-clock time Plaintiff spent starting-up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a call center employee both as a customer care representative and as Assistant Manager of the call center.

36. At an estimated five (5) to ten (10) minutes per day of unpaid preliminary computer start-up and log-in time, Plaintiff and the putative Class are owed back pay prior to liquidation and interest.

37. At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work and preliminary start-up and log-in time that Plaintiff performed.

38. At all relevant times, Defendant controlled Plaintiff's work schedules, duties, protocols, applications, assignments, and employment conditions.

39. At all relevant times, Defendant was able to track the amount of time that Plaintiff spent starting up and logging in to Defendant's computer systems. However, Defendant failed to document, track or pay Plaintiff for the preliminary work that he performed in connection with each shift.

40. At all relevant times, Plaintiff was a non-exempt hourly employee, subject to the requirements of the FLSA.

41. At all relevant times, Defendant used its adherence and attendance policies against Plaintiff for their preliminary time worked and failed to pay for that time.

42. At all relevant times, Defendant's policies and practices deprived Plaintiff of wages owed for the preliminary activities Plaintiff performed. Because

Plaintiff typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived Plaintiff of overtime pay at a rate of one and one-half (1.5) times his regular rate of pay.

43. Defendant also underpaid Plaintiff and the Class for overtime work performed by failing to pay Plaintiff and the class a rate of one and one-half (1.5) times the regular rate of pay.

44. Rather than paying Plaintiff at a rate of one and one-half (1.5) times the regular rate of pay as required by the FLSA, Defendant paid Plaintiff $10.56 per hour, even though his regular rate of pay was between $11.00-$13.00 throughout his employment.

45. Defendant knew or should have known that Plaintiff and other call center employees' time spent starting up and logging into Defendant's computer systems and websites is compensable under the FLSA.

46. Defendant knew or should have known that Plaintiff and the Class were owed one and one-half (1.5) times their regular rate of pay under the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

47. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of the following classes:

> a. *All similarly situated current and former hourly employees who worked for Defendant at any time*

> *during the last three years and worked at least one week of overtime.*
>
> b. *All similarly situated current and former hourly on-site call center employees who worked for Defendant at any time during the last three years.*

(hereinafter referred to as the "Class").  Plaintiff reserves the right to amend these definitions if

48. Excluded from the Class are all of Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

49. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).  The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

50. The employment relationship between Defendant and every Class member is the same and differs only by name and rate of pay.  The key issues—the amount of uncompensated preliminary start-up and log-in time and the manner by which Defendant calculates and pays overtime—does not vary substantially from

Class member to Class member.

51.     The key legal issues are also the same for every Class member, to wit: whether the 5 to 10 minutes of preliminary start-up and log-in time required to commence a session are compensable under the FLSA and whether Defendant properly computed and paid overtime to the Class members.

52.     Plaintiff estimates that the Class, including both current and former employees over the relevant period, will include between 100 members.  The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

## COUNT I
## (29 U.S.C. § 216(b) Collective Action)

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*—FAILURE TO PAY OVERTIME

53.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

54.     At all times relevant to this action, Defendant was the employer of the Plaintiff and the Class under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.  See also* 29 C.F.R. § 791.2(b).

55.     Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

56. At all times relevant to this action, Plaintiff and the Class were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

57. Plaintiff and the Class either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

58. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

59. At all times relevant to this action, Defendant failed to properly calculate overtime premiums at a rate of one and one-half (1.5) times an employee's regular rate of pay.

60. In workweeks where Plaintiff and other Class members worked forty (40) hours more, Defendant failed to compensate Plaintiff and other Class members at one and one-half (1.5) times each employee's regularly hourly wage.

61. At all times relevant to this action, Defendant required Plaintiff and all similarly situated current and former Class members to perform five (5) to ten (10) minutes of preliminary computer start-up and log-in time per session, but failed to pay these employees the federally mandated overtime compensation for all services

performed.

62. The preliminary and off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities are not *de minimis*.

63. In workweeks where Plaintiff and other Class members worked forty (40) hours or more, the uncompensated preliminary start-up and log-in time should have been paid at the federally mandated rate of one and one-half (1.5) times each employee's regularly hourly wage.  29 U.S.C. § 207.

64. Plaintiff and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

65. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for call center employees to complete the preliminary start-up and log-in process, and Defendant could have properly compensated Plaintiff and the Class for these preliminary activities, but did not.

66. Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined the appropriate overtime rate for its employees and properly compensated Plaintiff and the Class for all overtime worked at one and one-half (1.5) times their regular rate, but did not.

67. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

c. Designating Plaintiff as the representatives of the FLSA collective action Class;

d. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

e. Declaring Defendant's violation of the FLSA was willful;

f. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class the full amount of damages and liquidated damages available by law;

    g.    Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

    h.    Awarding pre- and post-judgment interest to Plaintiff on these damages; and

    i.    Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, ROGER ECHOLS, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

This 12th day of February, 2014.

**BARRETT & FARAHANY, LLP**

/s/ Amanda A. Farahany
Amanda A. Farahany
Georgia Bar No. 646135
Benjamin F. Barrett
Georgia Bar No. 039586
1100 Peachtree Street, Suite 500
Atlanta, GA 30309
Telephone:  (404) 214-0120
Facsimile:  (404) 214-0125

*Local Counsel for Plaintiff*

Jacob R. Rusch
*(Pending Admission Pro Hac Vice)*
MN Bar No.  391892

David H. Grounds
*(Pending Admission Pro Hac Vice)*
MN Bar No.  285742
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
jrusch@johnsonbecker.com
dgrounds@johnsonbecker.com

Jason J. Thompson
*(Pending Admission Pro Hac Vice)*
MI Bar No. P47184
Jesse L. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P72614
Neil B. Pioch
*(Pending Admission Pro Hac Vice)*
MI Bar No.  P67677
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300
jthompson@sommerspc.com
jyoung@sommerspc.com
npioch@sommerspc.com

*Trial Counsel for Plaintiff*